PEOPLE v KENNETH SMITH

PEOPLE v JENNETTE

1. CRIMINAL LAW—EVIDENCE—TRIAL—ABSENT DEFENDANT—PREJU-
   DICE.
   No evidence should be taken against an accused when he is
   absent from trial; prejudice to the absent defendant is pre-
   sumed.

2. CRIMINAL LAW—TRIAL—ABSENT CODEFENDANT—PREJUDICE—CAU-
   TIONARY INSTRUCTIONS—PRESENTATION OF EVIDENCE—TRIAL
   TACTICS.
   Defendants who remained for a trial after a codefendant was no
   longer present must show such actual prejudice to themselves
   as would amount to a denial of a fair trial; the defendants
   failed to make a sufficient showing of prejudice where the trial
   judge effectively curbed any inclination on the part of the jury
   to hold an inference of guilt from a codefendant's flight against
   the present defendants by a cautionary instruction, the orderly
   presentation of the defendants' evidence was not disrupted and
   defense tactics were not impeded by the absence of the co-
   defendant.

Appeal from Wayne, John M. Wise, J. Submitted
June 9, 1975, at Detroit. (Docket No. 21256.) De-
cided July 23, 1975.

Kenneth D. Smith and Harold Jennette, Jr.,
were convicted of breaking and entering. Defend-
ants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Patricia J. Boyle,* Principal

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law §§ 277, 298.
[2] 75 Am Jur 2d, Trial §§ 22, 747.

Attorney, Research, Training and Appeals, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for the people.

*Monash & Moss, P. C.,* for defendants.

Before: BRONSON, P. J., and V. J. BRENNAN and D. E. HOLBROOK, JR., JJ.

PER CURIAM. Defendants were found guilty by a jury of breaking and entering, contrary to MCLA 750.110; MSA 28.305. Defendant Harold Jennette, Jr. was sentenced to a prison term of from four to ten years, while defendant Kenneth Smith received from five to ten years. Both defendants appeal by right.

The defendants here contend that the trial judge should have declared a mistrial when a third codefendant failed to show up for the second day of trial after being released on bond. This Court must reject that argument on grounds that these two defendants failed to show prejudice.

When an accused is absent from trial, no evidence should be taken against him, *People v Medcoff,* 344 Mich 108; 73 NW2d 537 (1955), *People v Swan,* 59 Mich App 409; 229 NW2d 476 (1975). Even more importantly, prejudice to the absent defendant is presumed, *People v Ewing,* 48 Mich App 657; 211 NW2d 56 (1973), *People v Swan, supra.* These cases refer only to proceedings against the absent defendant himself. No similar rule of assumed prejudice exists as to codefendants who stayed around for trial. Therefore, such codefendants must show actual prejudice such as to deny them a fair trial.

Basically, two types of prejudice could result to these defendants. First, the inference of guilt from the flight of an accused could affect the remaining

defendants. Secondly, the orderly presentation of evidence could be destroyed by the absence of a codefendant. The defendants here failed to make a sufficient showing along either line.

The trial judge effectively curbed any inclination on the part of the jury to hold defendant Zelinski's flight against the remaining defendants. After the police made extensive efforts to locate the absent codefendant, the trial judge gave a cautionary instruction to the jury:

> *"The Court:* Ladies and gentlemen of the jury, I think at this time it would be an appropriate time for the court to indicate to you that as you noticed yesterday afternoon one of the defendants had absented himself and we are proceeding in the cause in absentia because it's been a voluntary absence. We haven't had any word nor were we able to locate, that is the police department hasn't been able to locate him. Nor has any of the parties involved or has his attorney been able to locate him. But as I indicated to you although there are three defendants you must treat each of them separately and even though we are treating him in absentia that is no indication of his guilt or innocence in this particular case. The testimony that you hear and have heard applies whereever his name is involved, applies to him as well as to anyone else. So I am just indicating to you that even though you don't see the man here, Mr. Zelinski, we are proceeding and trying him in absentia because we embarked on trial and this is a voluntary act on his part. That is the reason the prosecutor asked the witness yesterday afternoon where they had seen the other two defendants and they had indicated they had seen him the day before. That is the only reason for the problem."

The trial judge further cautioned the jury in his final instructions to treat each defendant separately. Defense counsel indicated at that time that he was satisfied with the charge to the jury.

Those cautionary instructions were sufficient to prevent any inference of defendants' guilt by the jury after their codefendant disappeared from the trial. We think that the rule established to deal with the problem of a codefendant pleading guilty to the charges during trial is a good one to apply here. In that situation, a cautionary instruction is deemed sufficient to cure all prejudice to the remaining defendants, *United States v Soares,* 456 F2d 431 (CA 10, 1972), *United States v Earley,* 482 F2d 53 (CA 10, 1973), *cert den,* 414 US 1111; 94 S Ct 841; 38 L Ed 2d 738 (1973), *Wood v United States,* 279 F2d 359 (CA 8, 1960). The defendants cannot claim that they were prejudiced by a direct jury inference as to their guilt.[1]

A second kind of prejudice arises from the disruption of the orderly presentation of a defendant's evidence during trial. Yet that did not occur here. During opening arguments, the theory which defense counsel was trying to follow was clearly shown:

*"Mr. Miller:* Ladies and gentlemen of the jury, the defense in this case is very simple. My clients did not break in that door. There is no breaking as far as my clients are concerned and there is no entering. We will show you that the prosecutor's statement that the door was kicked in by one foot is an impossibility. We will show you that to break in that steel door there would have to be a battering ram or a heavy tool or something to push it in. Our statement simply is you can draw your own conclusion.

---

[1] The trial judge did not give the first cautionary instruction until the third day of trial. Consequently, some testimony in which the missing codefendant was identified came into evidence before the jury was informed as to the reasons for that codefendant's absence. We do not find that fact to be important to the result here. The trial judge wisely waited until the police had a chance to locate the codefendant before interjecting what would be a prejudicial comment if the codefendant had returned to the trial.

"The people claim that my clients broke in that store. You have already heard about surveillance, how they were watching the car and we will show you in our defense that these defendants did not break in that door and enter that building.

"Thank you."

That theory was pursued unrelentingly by the defense counsel throughout the trial; and its effectiveness was not destroyed by the absence of defendant Zelinski.

On cross-examination, the defense counsel extensively questioned each police officer on the strength of the door that was knocked in. That line of questioning clearly was aimed at supporting the defense theory that it was physically impossible for the defendants to break the door without tools. Then, when the defendants presented their evidence, two expert witnesses were called to testify as to whether a door of that type could be kicked in without the use of tools. The defense theory was then reemphasized during the closing arguments:

"Now ladies and gentlemen, I know about police officers. I know their job is tough and I know what they have to do. But let's get the man and if we don't get him let's not frame him but let's do it honestly. Let's take this door, a steel door, 3/8 of an inch, and correct me if I am wrong, of sheet metal on the outside of this big door that you saw in the pictures. And the officer would want you to believe these two men, one of them might weigh 190 but the other weighs about 125, you can look them over and use your own judgment, these two men with their feet kicked in this door. I can't believe it. You can't believe it. You would rather believe somebody did it with a bumper of an automobile. There is no way. Mr. Bubolz said he wouldn't even attempt it and he's a big man. The other man who didn't know anybody here and had no fish to fry said it

looked to be a sledgehammer or something with great force. And counsel has said something about that inner door, that inner frame. He didn't replace that, he only replaced some of the three-inch bolts that were holding it in place. Is anybody with their foot going to loosen these three-inch bolts that are into that cement? Oh, no. This has got to be proven to you beyond a reasonable doubt, that these men kicked that door open and went in there. Think about it. They might not have been there for any good but we don't know that. I might want to rob a bank and might drop over there because there may be a million in there that I would like to have. But you can't arrest me for that. You can't convict me for that, not before you twelve people."

This Court must conclude that the defense tactics used by defendants Smith and Jennette were not impeded by the absence of the third defendant. Significantly, neither defendant was called in support of the defense. It can hardly be argued that defendant Zelinski could have added more than the other defendants toward showing that the door could be broken down only by use of tools. Thus, the defendants have failed to show prejudice to the presentation of their case by the absence of defendant Zelinski.[2]

Affirmed.

---

[2] The defendants also allege that they were denied the effective assistance of counsel because their attorney should have changed trial tactics after Zelinski disappeared. Since we have determined that the tactic originally selected was equally as effective before and after defendant Zelinski fled, we must reject that argument.